**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Vera L Hasan,

Plaintiff,

v.

Commissioner of Social Security Administration,

Defendant.

No. CV-25-03408-PHX-DWL

**ORDER**

Plaintiff challenges the denial of her application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 13), the Commissioner's answering brief (Doc. 17), and Plaintiff's reply (Doc. 18), as well as the Administrative Record (Docs. 8-9, "AR"), and now affirms the Administrative Law Judge's ("ALJ") decision.

I. <u>Procedural History</u>

On October 19, 2021, Plaintiff filed an application for benefits, alleging a disability onset date of April 4, 2020. (AR at 17.) The Social Security Administration ("SSA") denied Plaintiff's applications at the initial and reconsideration levels. (*Id.*) On February 6, 2025, following a telephonic hearing, the ALJ issued an unfavorable decision. (*Id.* at 17-30.) The Appeals Council later denied review. (*Id.* at 1-3.)

…

…

## II. The Sequential Evaluation Process and Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant has engaged in substantial, gainful work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 416.920(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 416.920(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four, where the ALJ determines whether the claimant is still capable of performing past relevant work. *Id.* § 416.920(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotations omitted). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III. The ALJ's Decision

The ALJ concluded that Plaintiff had not engaged in substantial, gainful work activity since the alleged onset date and that Plaintiff had the following severe impairments: "bipolar disorder; depression; and substance abuse (alcohol)." (AR at 19.)[1] Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing. (*Id*. at 21-22.) Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c), except she can lift twenty-five pounds frequently and occasionally; can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can occasionally climb ladders, ropes or scaffolds; can occasionally be exposed to vibration and workplace hazards, such as unprotected heights and moving mechanical parts; and can interact with supervisors, coworkers and the public frequently.

(*Id.* at 22.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 23.) The ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) Michael Keer, D.O. ("not fully persuasive"); (2) Adrianne Gallucci, Ph.D. ("only partially persuasive"); (3) Denise Trowbridge, M.D. ("generally persuasive"); (4) George Stern, Ph.D. ("partly persuasive"); (5) Robert Mastikian, Psy.D. ("only partly persuasive"); (6) MaryAnne Belton, Psy.D. ("only partly persuasive"); and (7) Yuvia Herrera, DNP ("not persuasive"). (*Id.* at 26-27.)[2]

---

[1] The ALJ also determined that Plaintiff had the non-severe and/or not medically determinable impairments of stroke symptoms from an apparent cerebrovascular accident, plantar fasciitis, left shoulder pain, benign essential hypertension, hyperlipidemia, obesity, mild to moderate osteoarthritic changes of the right knee, left knee pain, chronic cough, obesity, and migraines. (AR at 19-21.)

[2] Additionally, the ALJ noted that "Exhibit 15F includes multiple reports, some approving continuation of services, some describing the services to be provided, and many approving continuing a disability finding for the purpose of disability leave, and supporting evidence and treatment notes from before the alleged onset date. With respect to the opinions that a claimant is unable to work or is disabled encroaches upon a determination

Based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff would be able to perform both her past relevant work as a collector and at least three other jobs that exist in significant numbers in the national economy: (1) housekeeping cleaner; (2) routing clerk; and (3) sub-assembler. (*Id.* at 27-29.)[3] Thus, the ALJ concluded that Plaintiff was not disabled. (*Id.* at 29-30.)

IV. Discussion

Plaintiff raises only one issue on appeal: whether the ALJ failed to provide legally sufficient reasons for rejecting her symptom testimony. (Doc. 13 at 1.) Plaintiff argues that "[r]emand without further administrative proceedings, other than calculation of benefits, would be an appropriate remedy in this case. Only in the alternative should this Court remand for further administrative proceedings." (*Id.* at 13.)

**A. Standard Of Review**

Under Ninth Circuit law, an ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation omitted). If so, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (citation omitted). Instead, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" only by "offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015) (citation omitted).

**B. Plaintiff's Symptom Testimony**

During the hearing, Plaintiff testified that she had attendance and performance issues at an earlier job due to "Bi-polar issues," "issues with having alcohol," and suicidal

---

reserved to the Commissioner, and it is neither valuable nor persuasive to the agency and cannot be given any special significance." (*Id.* at 27.)

[3] The ALJ additionally noted that those three jobs only require a light level of exertion and stated that if Plaintiff were able to perform jobs that require a more demanding level of exertion, she would also be able to perform the jobs of (1) floor waxer; (2) hospital cleaner; and (3) automobile detailer. (*Id.* at 29.)

feelings that caused her to check herself into the hospital. (AR at 40.) Plaintiff testified that she has experienced emotional problems since she was 10 or 11 years old and was diagnosed as bipolar in 2004. (*Id.* at 41.) When asked to identify the symptoms associated with her bipolar disorder, Plaintiff listed "sleep problems," "mood problems," a lack of clarity and focus, and irritation. (*Id.* at 42.) Next, Plaintiff testified that she had a stroke in July 2022 that has caused her to suffer from speech problems, including "struggl[ing] to find the right words" and slowing down the pace of her speech, and memory problems, including a need to "write down almost everything or I will forget it." (*Id.* at 45-46.) Next, Plaintiff addressed her various "physical problems," identifying the "worst" ones as left leg dysfunction that prevents her from walking and plantar fasciitis. (*Id.* at 48-49.) Plaintiff testified that "I can't be on my feet for more than I guess ten minutes to 20 minutes at a time and then I have to sit down." (*Id.* at 49.)

Plaintiff also submitted several written function reports. In one report, when asked to "Describe what you do from the time you wake up until going to bed," Plaintiff wrote: "I wake up fix breakfast for myself sometime eggs or breakfast cereal eat than go veg in bed or on the lounge chair wait for my family to come home. I eat dinner sometimes I assist in prep of dinner. I go to bed." (*Id.* at 163.) Elsewhere, Plaintiff wrote that she can only walk for one block before needing to stop and rest. (*Id.* at 167.) In a different report, Plaintiff checked boxes indicating she is limited in lifting, squatting, bending, standing, reaching, walking, kneeling, stair climbing, seeing, memory, completing tasks, concentration, and following instructions, wrote that she can walk for a half mile before needing to stop and rest, and can only pay attention for five minutes. (*Id.* at 184.)

C. **The ALJ's Evaluation Of Plaintiff's Symptom Testimony**

The ALJ separately analyzed Plaintiff's testimony regarding her alleged mental and physical impairments. (*Id.* at 23-26.)

Beginning with the alleged mental impairments, the ALJ identified four reasons for discrediting Plaintiff's testimony. First, although the ALJ acknowledged that Plaintiff had "severe mentalis" as well as "[b]ipolar disorder, depression, and substance abuse," the ALJ

noted that Plaintiff reported being "OK" or "fine" or "well" or "alright" during medical visits in 2020, 2021, 2022, 2023, and 2024 and also "denied symptoms" during examinations in March 2022, April 2022, May 2022, September 2022, November 2022, June 2023, August 2023, December 2023, February 2024, and August 2024. (*Id.* at 23-24.) Second, the ALJ summarized various treatment records and concluded on the basis of those records that the "[o]bservations of treating physicians and consultative examiners also indicate mental impairments less serious than alleged." (*Id.* at 24-25.) Third, the ALJ concluded that Plaintiff's "activities also reflect less limiting mental impairments," because Plaintiff acknowledged in her function reports that she "tolerated other people in such places as stores" and "was able to do things requiring normal concentration, such as operate a motor vehicle, use a computer, pay bills, use a checkbook, text, and read." (*Id.* at 25.) Fourth, the ALJ pointed to the "effectiveness of medication," noting among other things that Plaintiff reported "doing OK through April 2022 as [she] remained stable with adjustment of medication, such as Prazosin and Abilify"; that "[w]hen starting at Second Chance Treatment Center in January 2023, medication was aripiprazole, and lithium, and bupropion" and "[i]n November 2023, [Plaintiff] reported she was much better on medication without adverse effects"; that Plaintiff again "reported doing well in August 2024"; and that "[i]n October 2024, [Plaintiff] was continued on aripiprazole, bupropion, and lithium for bipolar disorder." (*id.* at 24-25.)

Turning to Plaintiff's alleged physical impairments, the ALJ identified two reasons for discrediting Plaintiff's testimony. The first reason was inconsistency with the objective medical evidence:

> [Plaintiff's] own comments to treating physicians and observations of treating physicians also reflect upon the [Plaintiff's] allegations not being consistent with the medical evidence of record throughout the relevant period. In April 2022, [Plaintiff] denied chest pain, palpitations, back pain, neck pain, or decreased range of motion. In May 2022, [Plaintiff] reported feeling well with no physical complaints. In September 2022, [Plaintiff] had full strength, no edema, grossly intact sensation, and normal gait. In November 2022, [Plaintiff] had full strength, intact sensation except vibration perception in ankles, intact tandem gait, ability to walk on heels

> and toes, normal coordination and reflexes, normal cardiovascular findings, no edema, and no spinal tenderness. In June 2023, lungs were clear to auscultation and musculoskeletal and neurological systems were grossly intact. In December 2023, [Plaintiff] reported no musculoskeletal or neurological symptoms, and the claimant had a normal physical examination including normal gait and stance. During a typical review of systems in August 2024, [Plaintiff] denied problems in any bodily system.

(*Id.* at 25-26.) The second reason was inconsistency with Plaintiff's activities of daily living, as Plaintiff "reported she had no problem with personal care, and she could do laundry, drive, and shop" and "[i]n her first function report filed in the record, [Plaintiff] denied any physical problems related to her impairments." (*Id.* at 26.)

D. **The Parties' Arguments**

Plaintiff argues that "[t]he ALJ discounted [her] symptom testimony based on the ALJ's belief that [her] bipolar disorder was 'stable,' some medical records showed normal findings, and she was able to complete activities of daily living." (Doc. 13 at 7.) As for the first reason, Plaintiff argues that "stability with treatment does not necessarily show that a claimant's symptom testimony is inconsistent with the medical evidence of record." (*Id.* at 7-8.) As for the second reason, Plaintiff argues that "listing medical evidence, by itself, is insufficient to reject a claimant's symptom testimony." (*Id.* at 8-9.) Plaintiff contends that the ALJ merely "recited some of [her] symptom testimony, and then launched into a summary of [her] medical evidence in support of the ALJ's finding that [she] could work. The ALJ did not offer specific inconsistencies between [her] symptom testimony and the medical evidence." (*Id.* at 9-10.) Plaintiff adds: "[N]ormal findings in medical records do not automatically mean a claimant's symptom testimony is invalid." (*Id.* at 10-11.) As for the third reason, Plaintiff argues that "the ALJ did not show that any of [her] activities were inconsistent with her testimony" and that "[t]he ALJ did not find—and this record does not demonstrate—that a substantial part of a typical day was spent engaged in activities inconsistent with disabling limitations." (*Id.* at 11-12.)

In response, the Commissioner argues that "the ALJ reasonably determined that normal mental status findings (contradicting claims of disabling focus and memory

limitations), successful treatment, daily activities, and other inconsistencies in the record, including Plaintiff's own frequent denials of mental health symptoms, undermine Plaintiff's claims of disabling limitations." (Doc. 17 at 3-4.) As for the ALJ's finding that Plaintiff's alleged mental impairments were inconsistent with the objective evidence, the Commissioner argues that the ALJ identified specific inconsistencies: "[T]he ALJ considered Plaintiff's allegations of problems with focus and memory and compared them to mental status findings showing normal and intact memory and cognition, and no difficulties with attention and concentration. At one examination, Plaintiff's performance on measures of memory, general fluency, cognitive flexibility, and planning skills fell within expected ranges. She also performed better with more complex, multi-step procedures than on simple tasks. As for Plaintiff's allegations of irritability and difficulties interacting with others, such as with supervisors and customers, the ALJ noted that Plaintiff was observed to be cooperative, pleasant, euthymic, and interactive. With respect to speech difficulties, the ALJ also acknowledged that, at an examination, Plaintiff reported that her psychiatrist 'noticed that she was having trouble finding words and speaking slower than usual.' Notably, however, during that examination, no speech difficulties were observed, as Plaintiff was 'interactive,' followed commands, and answered questions appropriately. The ALJ also considered other examinations showing that Plaintiff's thought processes were logical; she performed as expected on testing of general fluency; she was alert and oriented; and she had normal speech." (*Id.* at 5-6.) Next, the Commissioner argues that the ALJ "also reasonably considered that Plaintiff responded well to treatment." (*Id.* at 6.) Next, the Commissioner argues that the ALJ also permissibly "highlighted inconsistencies" in Plaintiff's own statements concerning the existence and severity of her mental symptoms. (*Id.*) Next, the Commissioner argues that the ALJ also permissibly found an inconsistency between Plaintiff's testimony and her daily activities, as "Plaintiff's ability to operate a motor vehicle, use a computer, pay bills, use a checkbook, text, and read were inconsistent with her alleged cognitive limitations" and "[s]hopping in stores was also incongruent with claims of irritability and difficulties interacting with others." (*Id.* at 7.)

Next, the Commissioner emphasizes that Plaintiff's testimony was inconsistent with the medical opinion evidence in the record. (*Id.* at 7-8.)

In reply, Plaintiff reiterates her contention that "[t]he ALJ's reasons to reject [her] symptom testimony did not rise to the level of specific, clear, and convincing reasons" (Doc. 18 at 6); accuses the Commissioner of utilizing "post hoc reasoning" in an "attempt[] to connect specific symptom testimony with specific information from the medical records" (*id.*); reiterates her earlier argument that "stability with treatment does always not show inconsistency with a claimant's symptom testimony and does not do so in this case" (*id.* at 6-7); argues that her denial of mental health symptoms during treatment visits was not a valid reason for discounting her testimony because those visits "were not for the purpose of psychiatric care" (*id.* at 7-8); argues that "plucking 'normal' findings out of medical records in a case of mental health symptoms that wax and wane is not a specific, clear, or convincing reason to reject a claimant's symptom testimony" (*id.* at 8); argues that "cognitive findings in the record do not show that [her] testimony about her mood disorders was inconsistent with this record" (*id.* at 9); and argues that "[t]here is no . . . disconnect between [her] severe and chronic depression and anxiety and her limited daily activities" (*id.*).

E. **Analysis**

The Court finds no harmful error in the ALJ's evaluation of Plaintiff's symptom testimony. As an initial (and, in the Court's view, dispositive) matter, Plaintiff's briefing only challenges the sufficiency of the ALJ's reasons for discounting her testimony regarding her *mental* symptoms. But as noted, Plaintiff also testified that she suffered from various *physical* symptoms and impairments, and the ALJ separately analyzed and discredited that testimony in the underlying decision. By not acknowledging that aspect of the ALJ's analysis, Plaintiff has forfeited any objection to it.

Even if the Plaintiff hadn't forfeited the issue, the Court finds this aspect of the ALJ's analysis persuasive. Although Plaintiff testified that her stroke in July 2022 resulted in various physical impairments, including left leg dysfunction, that interfere with her

ability to walk and limit her to being on her feet for more than 10 to 20 minutes at a time (AR at 45-49), the ALJ identified medical records from September 2022, November 2022, June 2023, December 2023, and August 2024 in which Plaintiff had full strength, normal gait, ability to walk on heels and toes, grossly intact musculoskeletal and neurological systems, and/or denied having any problems in bodily systems. (*Id.* at 26.) The ALJ also noted that in her function report, Plaintiff reported that she could do laundry, drive, and shop. (*Id.*)[4] It was permissible for the ALJ to discredit Plaintiff's testimony as a result of these inconsistencies, and Plaintiff cannot avoid this adverse credibility finding by limiting her briefing on appeal to the ALJ's analysis of her testimony regarding her mental symptoms. *Cf. Pryor v. Comm'r of Soc. Sec. Admin.*, 2024 WL 1672553, *6 (D. Ariz. 2024) ("Plaintiff contends that because his claimed respiratory impairments were not his 'main' impairments and were not the subject of his hearing testimony, it is 'irrelevant' that he may have made inconsistent or exaggerated claims regarding them in his questionnaire. This argument is unavailing. Plaintiff cites no authority for the proposition that a Social Security claimant has *carte blanche* to provide exaggerated claims so long as the exaggerated impairments are not the 'main' focus of the disability claim. Nor would such a rule make sense. It is an accepted and common-sense principle that a factfinder may choose to discount all of a witness's testimony once the factfinder has determined the witness made a deliberately exaggerated claim. Additionally, putting aside the issue of respiratory impairments, the ALJ also provided an extensive discussion of why Plaintiff's claimed mental impairments were inconsistent with the objective medical evidence. Plaintiff's only rejoinder as to this issue is that '[b]ecause this appeal is not based on [his] mental impairments, the ALJ's rejection of those portions of [his] symptom testimony is irrelevant.' This argument fails for the same reason as Plaintiff's argument regarding his respiratory impairments—Plaintiff cannot avoid the consequences of the ALJ's inconsistency determination by contending that his appeal is not based on the testimony

---

[4] Plaintiff made such representations both in the function report she submitted in May 2022 (AR at 164-65, 169) and in the function report she submitted in December 2022 (AR at 181-82, 186).

that was found to be inconsistent and exaggerated.”).

At any rate, the Court also finds no harmful error in the ALJ’s evaluation of Plaintiff’s testimony regarding her mental symptoms. The ALJ’s first proffered reason for the adverse credibility finding as to that issue was that Plaintiff’s testimony was inconsistent with the objective medical evidence. This is, in general, a permissible basis for an adverse credibility finding, at least when it is coupled with other reasons. *See, e.g., Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (“Claimants like Smartt sometimes mischaracterize [Ninth Circuit law] as completely forbidding an ALJ from using inconsistent objective medical evidence in the record to discount subjective symptom testimony. That is a misreading of [Ninth Circuit law]. When objective medical evidence in the record is inconsistent with the claimant’s subjective testimony, the ALJ may indeed weigh it as undercutting such testimony. We have upheld ALJ decisions that do just that in many cases.”) (citations omitted); *Carmickle v. Comm’r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (“Contradiction with the medical record is a sufficient basis for rejecting the claimant’s subjective testimony.”) (citation omitted); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (“While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant’s pain and its disabling effects.”).

The ALJ’s finding of inconsistency with the objective medical evidence is also supported by substantial evidence. During her hearing testimony, Plaintiff identified two of her mental symptoms as “I get irritated by small things” and “I’m not that clear or that focus[ed] when I’m that tired.” (AR at 42.) It was rational for the ALJ to find an inconsistency between this testimony and the “[o]bservations of treating physicians and consultative examiners” that Plaintiff was “cooperative, pleasant, and sometime euthymic,” “had normal or appropriate mood and affect or even good mood,” “was interactive,” “was consistently observed to be alert and oriented,” “showed no difficulties with attention or concentration,” and had “performance on measures of attention [that] fell

within expected ranges." (*Id.* at 24-25.) The ALJ's reasoning on this point was sufficiently specific and does not rely on post hoc reasoning supplied by the Commissioner.

Another of the ALJ's proffered reasons for the adverse credibility finding related to Plaintiff's mental symptom testimony was that Plaintiff repeatedly denied experiencing anxiety, depression, or other psychological symptoms. (*Id.* at 24.) This, too, is a permissible basis for an adverse credibility finding. *See, e.g., Devillez v. Bisignano*, 2025 WL 3241410, *1 (9th Cir. 2025) ("Devillez's medical records show that he denied symptoms of depression, anxiety, and suicidality. By noting those inconsistencies in the record and Devillez's lack of mental-health treatment, the ALJ identified substantial evidence supporting her conclusion that Devillez's depression was non-severe."); *Shaughnessy v. Kijakazi*, 2022 WL 4093740, *1 (9th Cir. 2022) ("The ALJ's reasons for discrediting Shaughnessy's testimony were specific, clear, and convincing. . . . When seeking treatment, Shaughnessy frequently denied experiencing the symptoms to which he later testified, and the results of physical examination are inconsistent with Shaughnessy's testimony.").

The ALJ's finding on this issue is also supported by substantial evidence. In her reply brief, Plaintiff does not dispute that she repeatedly denied experiencing any psychological symptoms during medical visits—instead, she argues those denials should be disregarded because they occurred during "treatment visits that were not for the purpose of psychiatric care." (Doc. 18 at 7.) This argument is unavailing. *Cf. Salazar v. Comm'r of Soc. Sec. Admin.*, 2023 WL 2386143, *7-8 (D. Ariz. 2023) ("[T]he ALJ correctly noted that Plaintiff did not raise any allegations of back pain during examinations performed by other medical providers. Although it is true that these examinations were performed by providers who did not specialize in back care, Plaintiff does not cite any case or regulation suggesting that such providers are incapable of observing and documenting a patient's physical symptoms."). Although it perhaps would have been reasonable for a different factfinder to disregard Plaintiff's denials of psychological symptoms on this basis, the narrow question here is whether it was rational for the ALJ to perceive them as inconsistent

with Plaintiff's testimony. It was. And "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954.

Finally, yet another of the ALJ's proffered reasons for the adverse credibility finding related to Plaintiff's mental symptom testimony was that her condition was "effectively managed by medication." (AR at 25.) This is also a permissible reason under Ninth Circuit law for discrediting a claimant's symptom testimony. *See, e.g., Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) ("[T]he ALJ pointed to Tommasetti's testimony that his severe diabetes was not a 'disabling problem,' was controlled by medication, and was not the reason he stopped working. This testimony undermines Tommasetti's prior claims that his diabetes was among his disabling conditions."); *Fry v. Berryhill*, 749 F. App'x 659, 660 (9th Cir. 2019) ("The ALJ proffered specific, clear, and convincing reasons for discounting Fry's testimony concerning the severity of her symptoms, including . . . the effectiveness of Fry's conservative treatment."). *See also* 20 C.F.R. § 1529(c)(3)(iv)-(v) ("Factors relevant to your symptoms, such as pain, which we will consider include . . . [t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms . . . [and] [t]reatment, other than medication, you receive or have received for relief of your pain or other symptoms.").

The ALJ's finding on this issue is also supported by substantial evidence. The ALJ's finding was detailed and specific:

> Bipolar disorder was described as stable in October 2020. From April 2020, [Plaintiff] reported doing 'OK', and she continued to report feeling fine or well through February 2021. In April 2021, she reported doing well and getting better. [Plaintiff] reported doing well in August 2021, and doing OK through April 2022 as [Plaintiff] remained stable with adjustment of medication, such as Prazosin and Abilify. She continued to report being 'alright[']' in November 2022 as she remained clinically stable. When starting at Second Chance Treatment Center in January 2023, medication was aripiprazole, and lithium, and bupropion. In November 2023, [Plaintiff]

> reported she was much better on medication without adverse effects. [Plaintiff] reported doing well in August 2024. In October 2024, [Plaintiff] was continued on aripiprazole, bupropion, and lithium for bipolar disorder.

(AR at 24.) It is true, as Plaintiff emphasizes, that the facts of this case are distinguishable from *Wellington* in some respects and that mental health symptoms can wax and wane. (Doc. 18 at 7-8.) Even so, it was rational on this record for the ALJ to conclude that Plaintiff's repeated instances of documented stability and improvement from medication over a multi-year period were inconsistent with Plaintiff's claims of disabling mental symptoms.[5]

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 14th day of September, 2026.

Dominic W. Lanza
United States District Judge

---

[5] Given these determinations, it is unnecessary to address the sufficiency of the ALJ's additional proffered reasons for the adverse credibility finding.